IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **DONIELLE CANDELARIA,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | Case No.: 4:23-cv-00079-ACA |
| ] | |
| **SOCIAL SECURITY** ] | |
| **ADMINISTRATION,** ] | |
| **COMMISSIONER,** ] | |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION

Plaintiff Donielle Candelaria appeals the decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

### I.   PROCEDURAL HISTORY

Ms. Candelaria applied for a period of disability and disability insurance benefits, alleging disability beginning March 7, 2020. (R. at 212). The Commissioner denied Ms. Candelaria's claim (*id.* at 97) and reaffirmed that decision (*id.* at 108). Ms. Candelaria then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 141–42). After holding a hearing (r. at 44–71), the ALJ issued

an unfavorable decision (*id.* at 20–38). The Appeals Council denied Ms. Candelaria's request for review (*id.* at 1), making the Commissioner's decision final and ripe for judicial review, *see* 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "review[s] de novo the legal principles upon which the ALJ relied" but reviews the ALJ's decision only for whether "substantial evidence" supports it. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1266–67 (11th Cir. 2015). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* at 1267 (quotation marks omitted). The court may not "decide the facts anew, make credibility determinations, or re-weigh the evidence." *Id.* (alterations accepted; quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ

does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. THE ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ must determine whether (1) the claimant is unable to engage in substantial gainful activity; (2) the claimant has "a severe medically determinable physical or mental impairment" or combination of impairments; (3) the impairment "meets or equals" a listed impairment; (4) in the light of the claimant's residual functional capacity, the claimant can perform past relevant work; and (5) in the light of the residual functional capacity and vocational factors, the claimant can make an adjustment to other work available in significant numbers in the national economy. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021); *see* 20 C.F.R. § 404.1520(a)(4); *id.* § 404.1560(c)(1).

Here, the ALJ determined that Ms. Candelaria had not engaged in substantial gainful activity since her alleged onset date. (R. at 23). The ALJ found that Ms. Candelaria's obesity, degenerative disc disease, degenerative joint disease of the right hip, and bipolar disorder were severe impairments. (*Id.* at 24). The ALJ also found that Ms. Candelaria's hypertension, hyperlipidemia, diabetes mellitus, vitamin D deficiency, and gastroesophageal reflux disease (GERD) are non-severe. (*Id.* at 25). The ALJ then concluded that Ms. Candelaria does not have an impairment

or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (*Id.* at 25–30).

After considering the evidence of record, the ALJ determined that Ms. Candelaria had the residual functional capacity to perform light work with some additional restrictions. (R. at 30). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Ms. Candelaria could not perform her past relevant work. (*Id.* at 36). But the ALJ found that other jobs exist in significant numbers in the national economy that Ms. Candelaria could perform, including mail sorter, storage facility rental clerk, and parking lot attendant. (*Id.* at 37). Accordingly, the ALJ found that Ms. Candelaria was not disabled, as that term is defined in the Social Security Act, from March 7, 2020, the alleged onset date, through March 31, 2021, the date last insured. (*Id.* at 38).

**IV.   DISCUSSION**

Ms. Candelaria contends that substantial evidence does not support the ALJ's finding that (1) Ms. Candelaria's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record and (2) she is capable of performing a range of light work. (*See* doc. 13 at 9, 11). The court examines each issue in turn.

### 1. Credibility Determination Regarding Intensity, Persistence, and Limiting Effects of Symptoms

The ALJ found that the objective medical evidence does not fully support Ms. Candelaria's allegations of disabling symptoms "such as back pain with limited ability to stand, walk, and sit and use of a cane." (R. at 31, 33). Ms. Candelaria challenges that determination. (Doc. 13 at 7–13). She argues that the ALJ failed to properly evaluate her subjective complaints of pain in accordance with Eleventh Circuit standards. (*Id.* at 5–7). Although she does not challenge a finding related to any specific impairment, her argument focuses on the ALJ's alleged failure to consider medical records relating to low back and hip pain. (*See, e.g.*, *id.* at 7, 9–12; *see also* r. at 33 ("Overall, the objective medical evidence does not fully support the claimant's allegations of disabling symptoms such as back pain with limited ability to stand, walk, and sit and use of a cane.")). Specifically, she argues the ALJ selectively viewed evidence that supported his conclusion. (Doc. 13 at 8–9).

The ALJ is required to articulate explicit and adequate reasons when making credibility determinations about a claimant's testimony of subjective pain or symptoms. *See Dyer v. Barnhart*, 395 F. 3d 1206, 1210 (11th Cir. 2005); *see also* 20 C.F.R. § 404.1529(a). The court is bound by the ALJ's credibility determination so long as he "clearly articulate[s] explicit and adequate reasons" for the determination and substantial evidence supports it. *Dyer*, 395 F.3d at 1210–11 (quotation marks omitted).

Over a number of years, Ms. Candelaria has seen an emergency physician because of chronic back pain on multiple occasions. (*E.g.*, r. at 425, 443, 452, 459, 478, 495, 515, 572). She described pain in the area of her mid and lower lumbar spine and described the pain as radiating to the groin and to the right hip, thigh, knee, calf, and foot. (*Id.* at 425). But she denied bladder or bowel dysfunction or sensory or motor loss. (*Id.*). A physical exam showed she had a mild muscle spasm of the right posterior back, moderate vertebral point tenderness over the mid and lower lumbar spine, mild soft tissue tenderness in the right lower lumbar area, and mildly limited range of motion in the lumbar spine; but she otherwise had no motor or sensory deficit, and normal extremity range of motion with no tenderness. (*Id.* at 427–28).

X-rays of the lumbar spine showed mild to moderate facet hypertrophy at the lower lumbar spine but no acute osseous abnormality. (R. at 442, 453). X-rays of the thoracic spine showed no significant abnormality. (*Id.* at 494). An MRI (magnetic resonance imaging) of the lumbar spine showed mild degenerative changes in facet joints bilaterally from L3 through S1, but no fracture or osseous destruction with no changes since prior screening in 2016. (*Id.* at 503; *see id.* at 440).

Ms. Candelaria was discharged from her emergency department visits with instructions for follow-up care with her primary care physician. (*E.g.*, r. at 430, 454). Records from her primary care physician show that she sought routine visits for,

among other things, exacerbation of symptoms such as back pain. (*E.g.*, *id.* at 322, 554, 679). Examination findings showed that she had spinal and paraspinal tenderness, positive straight leg raise testing, muscle spasm, and hip tenderness and decreased range of motion, but otherwise had no lower extremity hyporeflexia, normal motor movement, grossly observed on gripping and pulling, no edema, swelling, redness, or tenderness of extremities, and normal alertness and orientation. (*E.g.*, *id.* at 324, 328, 331, 335, 339, 344, 348, 351, 355, 358, 362, 365, 555). X-rays of the thoracic spine showed no significant abnormality (*id.* at 434), and x-rays of the lumbar spine showed mild to moderate facet hypertrophy and no acute bony abnormality (r. at 716–17).

Ms. Candelaria was referred to The Orthopedic Center for follow-up care for back and hip pain. (*See id.* at 538). She rated her pain as "10 out of 10 and [sic] its worst" and described it "as a deep ache and sharp type pain." (*Id.*). An examination showed she had pain with FABER maneuver, tightness and discomfort in the right SI joint region, and right paraspinal and lumbar region tenderness but otherwise had full strength and sensation in the L2 through S1 dermatome distribution, and not much pain with sacroiliac proactive maneuvers. (*Id.* at 539). Ms. Candelaria was referred to a physical therapist. (R. at 540). Although Ms. Candelaria reported that she uses a cane (*id.* at 660), her doctor recommend—but did not prescribe—the cane (*see id.* at 100; *see also id.* at 58).

At the hearing, Ms. Candelaria testified that she can stand for three hours at 45-minute intervals, but she can only walk thirty steps. (R. at 58, 60). She further testified that her back hurts "really bad" after standing for more than forty-five minutes (*id.* at 59), that the pain affects her ability to sleep (*id.* at 60), and that the pain has worsened over the years (*id.* at 60–61).

Although the ALJ found Ms. Candelaria's impairments could cause the symptoms alleged, it found her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 31). The ALJ described the medical evidence above (*id.* at 31–33) but noted that her "abnormal physical findings . . . have remained the same throughout the adjudicate period" and examinations showed she had, among other findings, no lower extremity hyporeflexia and normal motor movement without paralysis (*id.* at 33).

Ms. Candelaria argues the ALJ's conclusion that her symptoms have remained the same during the adjudicative period is not substantial evidence to support his determination; however, that was not the ALJ's only basis to support his determination. (*See* doc. 13 at 9; r. at 13). Instead, the ALJ relied on Ms. Candelaria's medical records that refuted her allegations of disabling symptoms. (R. at 33–34). Accordingly, the record confirms the ALJ's reasons for his credibility determinations is supported by substantial evidence. *See Dyer*, 395 F.3d at 1210–11.

8

Given the ALJ's adequate explanation, this court may not reevaluate his finding about Ms. Candelaria's credibility. *See Henry*, 802 F.3d at 1267.

### 2. Substantial Evidence Supports the Residual Functional Capacity Determination

The ALJ found Ms. Candelaria has the residual functional capacity to perform work at a light exertion. (R. at 34). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). And it "requires a good deal of walking or standing, or . . . sitting . . . with some pushing and pulling of arm or leg controls." *Id.* A person considered capable of performing light work "must have the ability to do substantially all of these activities." *Id.*

Ms. Candelaria argues the ALJ erred for two reasons: (1) the ALJ did not properly consider treatment notes which document Ms. Candelaria's complaints of debilitating pain, the ineffectiveness of her medication, and physical examinations documenting abnormalities; and (2) the ALJ failed to consider the combined effects of those two abnormalities which are preclusive of the ability to perform light work. (Doc. 13 at 12). The court will address each argument in turn.

First, the ALJ considered treatment notes documenting Ms. Candelaria's complaints of debilitating pain and physical abnormalities. (*See, e.g.*, r. at 32) ("Primary care and pain management records . . . document . . . exacerbation of symptoms such as back pain"); (*id.* at 33) ("[T]he record shows abnormal physical

9

findings . . . including spinal and paraspinal tenderness, positive straight leg raise testing, and hip tenderness and decreased range of motion."). Although the ALJ did not expressly describe Ms. Candelaria's history of ineffectiveness of pain medication, he considered all medical evidence in the record, including that she was being treated with pain medication. (*See id.* at 20, 285; *see also id.* at 34). The decision demonstrates the ALJ considered her pain history because it includes a discussion of her symptoms, including her various reports of pain. (*See* r. at 32, 34); *see Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019).

Second, Ms. Candelaria provides no support for her argument that the ALJ did not consider the combined effects of her lumbar degenerative disc disease and right hip arthritis. (Doc. 13 at 12). Indeed, the ALJ expressly noted that his determination considered the abnormal physical findings as well as all other evidence in the record. (R. at 34). Relying on that evidence, including Ms. Candelaria's symptoms, objective evidence, non-severe impairments, and effects of her obesity on postural and non-exertional functions, he found that she can never climb ladders, ropes, or scaffolds, and can never be exposed to workplace hazards such as moving mechanical parts and high, exposed places. (*Id.*). And two consultative physicians determined Ms. Candelaria had the residual functional capacity to perform medium exertion, findings the ALJ disagreed with when he viewed the evidence in the light most favorable to Ms. Candelaria. (*Id.* at 35).

## V.     CONCLUSION

Ms. Candelaria's challenges to the ALJ's credibility determinations and residual functional capacity determination lack merit. Accordingly, the court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this February 6, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE